McDONALD, J.,
Dissenting.
liThe real issue in this case is whether the applicable statutes provide for an exemption or an exclusion. If an exemption, then the taxes are due; if an exclusion, they are not. The majority has concluded that they are exclusions and Harrah’s does not owe the tax. I disagree and believe La. R.S. 4:168 and La. R.S. 4:227 provide for an exemption from the taxes. Once these exemptions were suspended by the Legislature pursuant to La. R.S. 47:302(Q) and (R) the taxes became due.
This case has been well briefed and each side’s position is well argued. The majority suggests that there are other taxes imposed on Harrah’s that are a 12substitute for the regular licensing, sales, excise, and occupational taxes that would be imposed. Since these license fees, commissions, and taxes are in lieu of the normal taxes, they are a substitute for them and create an alternate taxing regime. Rather than relieve the taxpayer of a tax burden (an exemption), the statutes create a separate taxing scheme which makes it an exclusion.
However, race tracks such as Harrah’s paid sales taxes for years beginning in 1948. In 1968 the exemptions were created when La. R.S. 4:168 was enacted. The suspension of these exemptions was created in 1986. Thus, the taxes were paid for the 20 year period from 1948 until 1968, were exempted from 1968 until 1986, and then suspended in 1986. I believe the argument of LDR concerning the meaning of the term “in lieu of’ is more persuasive. LDR suggests that this term means three things.
First, in 1968 purchases by race track operators would be subject to sales, excise, and occupational license taxes just like everyone else were it not for the action of the legislature in providing the exemption. Such purchases had been subject to such taxes since 1948. However, in 1968 they would not have to pay such taxes any longer because they would be exempt from them and pay the enumerated taxes instead, or “in lieu of’ them.
Second, since race track operators were to be subject to the “license fees, commissions, and taxes imposed in this Part” they would be exempt from the taxes imposed on those not engaged in the horse race industry. In other words, they would be exempt from these taxes imposed on other businesses.
Third, the exemption was conditional. In order to receive the exemption, the race track had to prove that it had paid those taxes and fees imposed on them. If they could not prove they had paid the taxes, license fees, and commissions specifically imposed on them, then they must pay the sales taxes imposed on everyone else.
_JjThe majority quotes the difference between an exclusion and exemption as found in Tarver v. World Ship Supply, Inc., 615 So.2d 423 (La.App. 4 Cir.), writ denied, 616 So.2d 672 (La.1993), quoting Bruce J. Oreck:
Two well established rules of statutory construction come into play when considering exclusions and exemptions. A tax exemption is a provision which exempts from tax a transaction which would, in the absence of the exemption, otherwise be subject to tax. That is, there has been a statutory decision not *935 to tax a certain transaction which is clearly within the ambit and authority of the taxing statutes to tax. On the other hand, an exclusion relates to a transaction which is not taxable because it falls outside the scope of the statute giving rise to a tax, ab initio. Transactions excluded from tax are those which by the language of the statutes are defined as beyond the reach of the tax.
There is no question that sales taxes could be imposed on horse race track purchases. In fact, from 1948 until 1968 these sales taxes were paid by these facilities. In 1968, the legislature made the decision not the tax these purchases by race track operators if they paid other taxes that were imposed. This is the definition of an exemption, not an exclusion. For these reasons, I respectfully dissent.